**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

RODERICK MAURICE WHITE,

    Plaintiff,

v.

C/O NORMAN IRVING,

    Defendant.

CIVIL ACTION NO.: 6:14-cv-77

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison ("GSP") in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at GSP on a previous occasion. Defendant filed a Motion for Summary Judgment. (Doc. 70.) Plaintiff filed a Response, (doc. 81), Defendant filed a Reply, (doc. 88), and Plaintiff filed a Surreply, (doc. 89). Plaintiff also filed a Motion for the Court to Issue Order to Attorney General to Return Plaintiff's Property. (Doc. 86.) Defendant filed a Response. (Doc. 87). Plaintiff also filed a Motion for Protective Order, (doc. 93), to which Defendant filed a Response, (doc. 93.) For the reasons which follow, the Court **DENIES** Plaintiff's Motion for the Court to Issue Order to Attorney General to Return Plaintiff's Property. (Doc. 86.) Additionally, I **RECOMMEND** the Court **GRANT** Defendant's Motion, (doc. 70), and enter summary judgment in favor of Defendant on all remaining claims. I further **RECOMMEND** that the Court **DENY** Plaintiff's Motion for Protective Order, (doc. 93), and **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND[1]

Plaintiff asserts that Defendant Irving approached his cell door to serve Plaintiff's breakfast, and he opened the outside door to the tray box as well as the inside slider at the same time. Plaintiff alleges that he reached his hand out through the opening to get a cup of coffee, and Defendant slammed the outside door shut on Plaintiff's hand. (Doc. 1, p. 5.) Plaintiff asserts that Defendant was pressing his weight against the door. Plaintiff also asserts that he attempted to get his right hand out of the door by using his left hand, but he only trapped both of his hands. Plaintiff further asserts that Defendant told him several times that he was going to break Plaintiff's hand. Plaintiff states several of his fellow inmates started yelling at Defendant to free Plaintiff's hand and to walk away, but Defendant did not. Plaintiff avers it was not until another officer, Sergeant Latonia Johnson, told Defendant to stop what he was doing that Defendant stopped his actions. Plaintiff contends that he received cuts and scrapes to his hands, and these cuts were dripping blood. (Id.) Plaintiff was taken to medical, and pictures were taken of his injuries. (Id.) Plaintiff's Complaint was served upon Defendant based on alleged violations of the Eighth Amendment. (Doc. 14.)

## DISCUSSION

Defendant asserts in his Motion that Plaintiff cannot sustain his Eighth Amendment claim against him. (Doc. 70-2, p. 8.) Defendant also asserts he is entitled to qualified immunity. (Id. at p. 13.) Defendant maintains Plaintiff's claims for monetary damages are barred by the Prison Litigation Reform Act because he did not suffer any more than a *de minimis* injury as a result of Defendant's actions. (Id. at p. 14.) Defendant asserts Plaintiff is not entitled to injunctive relief. (Id. at p. 16.) Finally, Defendant asserts Plaintiff's Complaint should be dismissed as a sanction

---

[1] The recited allegations are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party.

for his abuse of the judicial process. (Id. at p. 19.) In moving for summary judgment, Defendant relies on his Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, Plaintiff's medical records, and several declarations sworn under penalty of perjury. In opposition, Plaintiff submits his Response and the declarations of two fellow inmates who were present in the dormitory on December 4, 2012.[2]

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to his Eighth Amendment claim, and Defendant's Motion is due to be granted as a result.

**I.   Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party

---

[2] Plaintiff failed to submit his own statement of material facts in opposition to Defendant's Statement. Plaintiff also failed to submit a declaration, affidavit, or any other statement sworn under penalty of perjury to countervail Defendant's affidavit. Plaintiff was forewarned his failure to do so would render the Defendant's statements admitted and accepted as true. (Doc. 14, p. 7.) The Court has, nevertheless, considered Plaintiff's argument against the grant of summary judgment, as well as what he has submitted as his supporting documentation.

must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.   Plaintiff's Use of Force Claim

Defendant asserts he was assigned as a floor officer in the D-East-2 dormitory on December 4, 2012, the date of the alleged use of force incident, and that dormitory housed inmates with histories "of engaging in disruptive activities within the [Georgia Department of Corrections'] prison system and who posed significant risks to the safe and secure operation of GSP." (Doc. 70-2, p. 2; Doc. 70-6, p. 3.) Defendant states that, due to the threat inmates posed to employees, the cell doors in that dormitory are equipped with a tray box, which is about waist level and which has an outer and inner door, so that personnel can provide food, drinks, medicines, and other items to the inmates without direct contact with the inmates. The tray box could be operated in two ways: 1) GSP personnel could open and close a flap on the side of the tray box to place items into the box; or 2) once an item was placed in the box and the box was closed, GSP personnel could then open a sliding door on the other side of the tray box, which would allow the inmate to reach into the tray box from inside his cell, to retrieve the item(s)

4

which had been placed inside. (Doc. 70-1, p. 3.) The handcuff flap is an additional opening on the cell door, which is located just above the tray box and is used to allow GSP personnel to place an inmate in handcuffs while the officer remains outside of the cell and while the inmate remains inside of the cell. (Doc. 70-1, p. 4; Doc. 70-2, p. 3; Doc. 70-3, p. 9.)

Defendant contends he provided inmates in the D-East-2 dormitory with breakfast on the morning of December 4, 2012. His usual practice was to open the outer door of the tray box on the inmate's door to place a cup of coffee and a carton of milk in the box, close the outer door, and open the sliding door to allow the inmate to retrieve these items. Defendant would repeat this process until the inmate had coffee, milk, and food. (Doc. 70-2, p. 3.) When he approached Plaintiff's cell on this particular morning to complete his usual processes, Defendant maintains he accidentally opened the handcuff flap on Plaintiff's cell door rather than the outer box of the tray box. Defendant maintains Plaintiff rushed to the door and "forcefully stuck" his hand through the handcuff flap. (Id. at p. 4; Doc. 70-1, p. 5.) Defendant contends Plaintiff bumped his right knuckle on the edge of the handcuff flap opening, which caused a minor cut that "began to bleed slightly." (Doc. 70-2, p. 4.)

Defendant asserts he ordered Plaintiff to remove his hand from the handcuff flap so that he could serve Plaintiff and the remaining inmates in the dormitory their breakfasts. According to Defendant, Plaintiff refused to remove his hand and cursed at Defendant and threatened to throw urine and/or feces on Defendant.[3] Defendant states he called for a supervisor's assistance while he stayed at Plaintiff's cell. While he was awaiting a supervisor's arrival, Defendant alleges he held the metal cover of the handcuff flap in a position as closed as possible without pressing on Plaintiff's hand, wrist, or arm so that Plaintiff could not throw any substance on him.

---

[3] According to Defendant, Plaintiff has a history of throwing urine, feces, and/or other bodily fluids from his cell at correctional officers. (Doc. 70-1, p. 3.)

5

(Id.) Once Sergeant Latonia Johnson arrived at Plaintiff's cell, Defendant left Plaintiff in Sergeant Johnson's charge and served breakfast to the remaining inmates in the dormitory.

Plaintiff told Sergeant Johnson that Defendant had used physical force on him. (Id. at p. 5.) Corrections Emergency Response Team ("CERT") officers then arrived at Plaintiff's cell to escort him to the medical unit. Misty Barber, a registered nurse, conducted a use of force examination on Plaintiff. During her examination, Ms. Barber noted Plaintiff had a "minor abrasion" on his right middle finger knuckle, but she did not observe any other injury. (Id.) Ms. Barber took a photograph of Plaintiff's right hand, cleaned his knuckle, and applied a bandage to it. Defendant asserts Ms. Barber opines that the minor abrasion Plaintiff had on his knuckle was not consistent with Plaintiff's hand being slammed in the tray flap box and crushed with Defendant's body weight. (Id.)

Defendant avers there is no evidence Plaintiff was subjected to an excessive use of force or that he suffered anything more than a *de minimis* injury, warranting the grant of summary judgment in Defendant's favor.

Plaintiff's excessive use of force claim and Defendant's Motion require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather

6

than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)). "'When considering these factors, [the court] 'give[s] a wide range of deference to [jail] officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.' [The Court] examine[s] the facts as reasonably perceived by [Defendants and their subordinates] on the basis of the facts known to [them] at the time.'" Shuford v. Conway, 86 F. Supp. 3d 1344 (N.D. Ga. 2015) (quoting Fennell, 559 F.3d at 1217–18) (alterations in original). Hudson, 503 U.S. at 5).

Through their supporting materials, Defendant and Plaintiff show the following in light of the factors the Court is to consider when analyzing whether an Eighth Amendment use of force was done wantonly and unnecessarily to cause harm.[4]

---

[4] The Court notes Defendant's averment that, because he denies using any physical force against Plaintiff, the only relevant prong in the excessive use of force test is whether Plaintiff suffered any more than a *de minimis* injury. (Doc. 70-2, p. 12.) As Defendant is aware, however, Plaintiff asserts that Defendant used excessive force against him. Thus, the Court must look to all five of these factors, no matter how light evidence is for any particular factor. The fact that Plaintiff only suffered a *de minimis* injury is but one factor to consider under a use of force analysis, and that one factor is in no way determinative of the issues before the Court. Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011). Indeed, the Supreme Court has long held that an inmate that escapes injury can nonetheless establish an excessive force claim. In the future, counsel for Defendant should address all of the factors that the Court must consider when evaluating an excessive force claim. Wilkins v. Gaddy, 559 U.S. 34, 37–38 (2010).

### A. The Need for the Exercise of Force

The first factor the Court looks to is whether there was a need for the exercise of force on a particular occasion. In this case, Plaintiff placed his hand in the tray flap of his door when Defendant opened it. Defendant denies using any force against Plaintiff and contends he closed the flap as tightly as he could without pressing on Plaintiff's hand to prevent Plaintiff from throwing bodily substances on him until the supervisor could come to the scene. (Doc. 70-1, p. 6; Doc. 70-2, pp. 4, 12; Doc. 70-4, p. 7.) Defendant avers he "repeated[ly]" ordered Plaintiff to remove his hand from the handcuff flap, yet Plaintiff refused to comply with his orders. (Doc. 70-4, p. 7.) Plaintiff contends that Defendant slammed the flap closed, placed his entire body weight against the flap, and refused to release his hold. (Doc. 70-3, pp. 12–14; Doc. 81, pp. 1, 4–5.) However, Plaintiff does not present any evidence to contradict Defendant's assertion that he ordered Plaintiff to remove his hand from the handcuff flap. Nor does Plaintiff dispute the factual evidence that he refused to obey Defendant's order. Also uncontroverted is Defendant's statement that Plaintiff has a history of throwing urine, feces, and/or other bodily fluids from his cell at correctional officers. (Doc. 70-1, p. 3.)

Because the evidence before the Court reveals that Plaintiff refused direct commands, Defendant was authorized to use some measure of force against Plaintiff in an effort to obtain Plaintiff's compliance with those commands. Thus, this factor weighs in Defendant's favor. Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at \*6 (S.D. Ga. Mar. 31, 2014) (noting that plaintiff failed to follow officer's lawful commands and that an "official need not wait until disturbances are dangerous before using force to restore order.") (citing Fennell, 559 F.3d at 1218).

**B.   The Relationship Between the Need for the use of Force and the Amount Applied**

As to this second factor, even viewing the evidence in the light most favorable to Plaintiff, the most a reasonable jury could conclude is that Defendant used slightly more force than was absolutely required. Prison officials undoubtedly have a desire and legitimate purpose to have those in their charge to comply with simple directives. Lester v. Ga. Dep't of Corr., No. 6:15-cv-110, 2016 WL 146514, at *4 (S.D. Ga. Jan. 12, 2016) (citing Brown v. Smith, 813 F.2d 1187, 1189–90 (11th Cir. 1987), which upheld a judgment in favor of an officer who used force against an inmate to accomplish the legitimate security purpose of getting the inmate into his cell), *adopted by* 2016 WL 524616 (Feb. 5, 2016). Yet, it is possible that even less force than what Plaintiff states Defendant used could have yielded in Plaintiff's compliance with Defendant's directive. From this, a reasonable jury could conclude that Defendant applied force that was greater than necessary. Therefore, the second factor weighs slightly in Plaintiff's favor. See Hutcheson v. Binion, No. 4:09CV056-M-S, 2011 WL 2669078, *3 (N.D. Miss. May 3, 2011) (finding that the first time an officer slammed a prisoner's arm may have been inadvertent in an attempt to maintain order, but it became "obvious" that the officer's repeated slamming of the inmate's arm in the flap crossed into the "unreasonable or even malicious territory."). However, this determination is hardly dispositive of the issues before the Court.

**C.   The Extent of Plaintiff's Injuries**

The extent of Plaintiff's injuries weighs heavily in Defendant's favor in the analysis of Plaintiff's excessive force claim. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins, 559 U.S. at 37). However, while the resulting injury can be

9

indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff. Id. at 800–01 (citing Wilkins, 559 U.S. at 37). Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

According to the Use of Force Assessment form, Plaintiff subjectively complained that his "right hand all messed up [sic]." (Doc. 70-5, p. 7.) Objectively, Plaintiff was cooperative, alert, and oriented, and his blood pressure, heart rate, respiration rate, and temperature were all within normal limits. (Id.) The only injury noted was a "minor abrasion" on the knuckle of his right middle finger.[5] (Id. and at p. 8.) No follow-up was necessary. Defendant also submitted a picture of Plaintiff's hand, dated December 4, 2012, which shows a superficial wound on Plaintiff's right hand, which measures approximately two inches in length. Ms. Barber, a non-party to this litigation, declared that, in her experience working in prisons, the "minor abrasion I observed on [Plaintiff's] hand was not consistent with his hand being slammed, trapped[,] or pinched in the outer flap of a tray box on a cell door."[6] (Id. at p. 5.) This objective evidence

---

[5] Ms. Barber's education plan for Plaintiff was to "avoid behavior requiring [the use of force]." (Doc. 70-5, p. 7.) This, coupled with the fact that a Use of Force Assessment was conducted, cut against Defendant's contention that he did not use any force against Plaintiff. Moreover, by Defendant's own admission, he tried to keep the flap as closed as possible to prevent Plaintiff from throwing any substances on him, which is indicative of Defendant having applied some amount of force (or pressure) on the flap.

[6] In his deposition, Plaintiff admits he had "cuts and stuff" on his right hand, and his hand was bleeding, but these cuts were not "deep cuts". (Doc. 70-3, p. 17.) Plaintiff also testified he had numbness in his right hand for a "long time" after this incident, yet he did not go to the medical unit because of this numbness. (Id.) Viewing Plaintiff's testimony in the light most favorable to Plaintiff, he still fails to show that he suffered any more than a *de minimis* injury. See Gillis v. Stoebner, 190 F. App'x 962, 963 (7th Cir. 2004) (citing Outlaw v. Newkirk, 259 F.3d 833, 839 (7th Cir. 2001), for the notion that swelling, bruising, discoloration, and numbness in an inmate's hand constitute *de minimis* injury strongly suggesting that the force applied was *de minimis*); Gardner v. Cty. of Baldwin, No. 12-0281-CG-C, 2014 WL 171839, at *13 (S.D. Ala. Jan. 15, 2014) (collecting cases, including one where the plaintiff alleged numbness and several other conditions, finding the injuries no more than *de minimis*). In addition,

serves to contradict any assertion Plaintiff could make that he suffered more severe injuries or that the amount of force Defendant used against him was excessive.[7] Smith v. City of Moultrie, No. 6:06-CV-39, 2007 WL 2684983, at *5 (M.D. Ga. Sept. 7, 2007) (quoting Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (a more than *de minimis* injury "is not . . . a scratch, an abrasion, a bruise, etc., which last even up to two or three weeks.").

While injury and the amount of force are imperfectly correlated, here the indisputably minimal injuries that Plaintiff suffered reveal that Defendant only applied minimal force. These injuries are so insignificant that they weigh against the jury finding for Plaintiff on the "core judicial inquiry" of whether "the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins, 559 U.S. at 39 (alteration in original) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Thus, this factor cuts in Defendant's favor.

### D. Extent of Threat to the Safety of Staff and Other Inmates

Though Plaintiff and the other inmates were contained in their cells during the use of force incident, if Defendant had been unable to gain Plaintiff's compliance with his direct orders, a disturbance in operations or some other unrest could have occurred. If the operations of a prison are disturbed, there is the potential for great risk to the safety of all involved. This is particularly true here, where Defendant contends the inmates in the D-East-2 dormitory had

---

Plaintiff admits he did not go to the medical unit for any numbness he may have experienced. Saunders v. Buckner, No. 1:07cv501(LMB/JFA), 2008 WL 4104439, at * 7 (E.D. Va. Aug. 28, 2008) ("[T]he absence of medical documentation of injuries weighs heavily against a finding of excessive force.").

[7] Defendant cites to Vicks v. Knight, 380 F. App'x 847 (11th Cir. 2010) for the proposition that even where a defendant and plaintiff swear to a different set of facts regarding the use of excessive force, summary judgment may be granted in favor of the prison officials where medical records show that there is no evidence of injury to corroborate the inmate's allegations of excessive force. See also, Evans v. Schnake, No. 7:11-CV-29(HL), 2012 WL 1802453 (M.D. Ga. Apr. 24, 2012) (crediting the medical evidence, which clearly undermined Plaintiff's alleged injuries). Here, the medical records do not support Plaintiff's allegations that Defendant slammed his hand in the door and placed all of his weight against Plaintiff's hand.

11

histories of engaging in disruptive behavior, such as throwing urine and feces at officers who approached their cells. (Doc. 70-2, p. 2.) Thus, this factor weighs in Defendant's favor.

### E. Any Efforts Taken to Temper the Severity of the Forceful Response

Given Plaintiff's injuries resulting from Defendant's use of force, little effort was needed to mitigate the effects of the force. Plaintiff was taken to the medical unit for evaluation almost immediately after the use of force incident. (Doc. 70-3, p. 14) (Plaintiff's acknowledgement that he was taken to the medical unit approximately ten minutes after the cessation of the use of force incident). Particularly in light of the minimal nature of Plaintiff's injury, the evidence reveals no impropriety in actions taken after the use of force. Therefore, this factor also cuts in Defendant's favor. Alday, 2014 WL 1320093, at *7.

Of the five factors this Court examines to determine whether Defendant used an excessive amount of force against Plaintiff, only one of these factors—the relationship between the need for the use of force and the amount used—could possibly be in Plaintiff's favor. The other factors weigh heaving in Defendant's favor and reveal that no reasonable juror could find for Plaintiff on his excessive force claims. Consequently, the Court should **GRANT** this portion of Defendant's Motion and enter summary judgment in Defendant's favor.

It is unnecessary to address the remaining grounds of Defendant's Motion.[8]

## III. Plaintiff's Motion for Order for Return of Property (Doc. 86)

Plaintiff contends Tarmarshe Smith, an officer at Georgia State Prison, confiscated his legal documents and gave these documents to Joshua Brooks, the attorney representing

---

[8] Though the Court need not address the relative merits of the remaining portions of Defendant's Motion, it is worth noting Defendant's assertion that Plaintiff's Complaint should be dismissed as a sanction for his failure to disclose a lawsuit he filed on the same date he filed this Complaint with this Court borders on frivolity. (Doc. 70-2, pp. 19–20.) The answers to which Defendant quibbles are to questions regarding "previous lawsuits", (doc. 1, p. 1), not contemporaneously filed lawsuits. Thus, Plaintiff's negative answers to these questions do not represent a lack of candor or any other abuse of the judicial process.

Defendant. (Doc. 86, p. 1.) Plaintiff alleges he wrote Mr. Brooks a letter seeking the return of all of his original documents and has not yet received a response to that letter or had his documents returned as of the date of his motion. Plaintiff requests that the Court issue an order directing Mr. Brooks to return his documents to him.

In response, Mr. Brooks notes a letter from Plaintiff dated December 27, 2015, yet he did not receive that letter until January 19, 2016, which is the same date Plaintiff's Motion was filed in this Court. Mr. Brooks contends he does not have any of the original documents Plaintiff seeks, but he did get copies of certain documents which were confiscated, and those copies were filed with the Court and served on Plaintiff. (Doc. 87, p. 3.) Mr. Brooks denies having engaged in unlawful activity or in any alleged violation of Plaintiff's civil rights. In addition, Mr. Brooks states, to the extent Plaintiff's Motion seeks the Court to order a non-party (Tarmarshe Smith) to return any such property, the Court lacks jurisdiction over this non-party. Finally, Mr. Brooks certifies that he mailed an additional copy of Defendant's Motion for Summary Judgment and all attachments to Plaintiff.

Based on Mr. Brooks' representations, the Court **DENIES** Plaintiff's Motion. It appears that Mr. Brooks has provided Plaintiff with at least one copy of all of the documents in his possession, and Mr. Brooks cannot provide more than he possesses.

### IV. Plaintiff's "Motion for Protective Order" (Doc. 93)

Plaintiff contends Sergeant Latonia Johnson came to his cell door on May 6, 2016, and told Plaintiff and his witness, Colby Davidson, she would pepper spray them and place them on strip cell status if they did not talk to her. (Doc. 93, p. 1.) Plaintiff also contends that Captain Javaka Johnson approached him on April 29, 2016, and "foul handled" him. (Id. at p. 2.) Plaintiff contends Captain Johnson had previously been investigated for sexually harassing

Plaintiff in 2013. Plaintiff seeks an order preventing Sergeant Johnson and Captain Johnson from contacting Plaintiff and his witnesses.

Defendant contends Plaintiff cannot obtain injunctive relief against non-parties, lacks standing to seek relief on behalf of other inmates, has not shown that he is entitled to injunctive relief, and is barred by the Prison Litigation Reform Act from seeking his requested relief.

I **RECOMMEND** that the Court **DENY** Plaintiff's Motion for the reasons Defendant sets forth in his Response.

## V. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or

fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and Defendant's Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, it is my **RECOMMENDATION** that the Court **GRANT** Defendant's Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint, **DENY** his Motion for Protective Order, and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal. The Court **DENIES** Plaintiff's Motion to Issue Order.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 6th day of July, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA